UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO SANCHEZ,<br><br>                              Plaintiff,<br><br>v.<br><br>AMY MILLER, et al.,<br><br>                         Defendants. | Case No.:  14cv2407-LAB-MDD<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[ECF No. 14]** |

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** and that Defendants' Motion for Partial Summary Judgment be **GRANTED**.

## I. PROCEDURAL HISTORY

Plaintiff Sergio Sanchez is a state prisoner proceeding pro se. (ECF Nos. 1, 2, 4).  On October 2, 2014, the date of his signature on the proof of service, Plaintiff constructively filed a Complaint under 42

U.S.C. § 1983.  (ECF No. 1 at 9).  Plaintiff claims that his constitutional rights were violated when prison staff disciplined him for refusing medical treatment and denied him the right to present witnesses during the disciplinary hearing.  (ECF No. 1 at 3-6).

In his First Claim, Plaintiff alleges Defendants Miller, Madden, Greenwood and Telles[1] violated his Fourteenth Amendment due process rights when Defendant Telles denied Plaintiff's request to present witnesses during the hearing on the Rules Violation Report.  (*Id*. at 5-6).  In his Second Claim, Plaintiff alleges all five Defendants (Miller, Madden, Greenwood, Telles and Martin) violated his First Amendment rights when Defendant Martin issued a Rules Violation Report in retaliation for his refusal of medical treatment.  (*Id*. at 6).  In his Third Claim, Plaintiff alleges all five Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when prison staff tried to force him to accept medical treatment and then punished him with "C status" when he refused.  (*Id*. at 6).  Plaintiff sues each Defendant in their individual capacity.  (*Id*. at 2:22).

On August 10, 2015, Defendants filed a combined Motion to Dismiss and Motion for Partial Summary Judgment, along with a *Rand* Notice.  (ECF No. 14).  Defendants move for partial summary judgment on the basis that Plaintiff failed to exhaust administrative remedies for all three claims against all of the Defendants, except for the due process

---

[1] Defendants mistakenly state that Plaintiff brings his First Claim against all five Defendants.  (ECF No. 14-1 at 2:3).  Defendant Martin is not named in the First Claim.  (ECF No. 1 at 5:28-6:1).

14cv2407-LAB-MDD

claim against Defendant Telles.  Defendants' Motion to Dismiss contends Plaintiff has failed to state a cognizable claim because (1) the Rules Violation Report incorporated into the Complaint by reference shows that Plaintiff was disciplined for lying and disrupting the yard—not for refusing medical treatment, (2) Plaintiff fails to allege a liberty interest, (3) the alleged mistreatment does "not come close" to an Eighth Amendment violation, and (4) Plaintiff fails to allege direct personal involvement by any Defendant other than Telles as to the First and Third Claims and other than Defendant Martin as to the Second Claim.

On August 12, 2015, this Court issued a *Klingele* Notice and a Scheduling Order on the Motion to Dismiss and Motion for Summary Judgment.  (ECF No. 16).  The Scheduling Order required Plaintiff to file his opposition on or before September 14, 2015.  (*Id*.).  On September 13, 2015, Plaintiff constructively filed a motion for extension of his time to file the opposition.  (ECF No. 17).  This Court granted the motion, and issued a new Scheduling Order requiring Plaintiff to file his opposition on or before October 29, 2015, and requiring Defendants to file their reply by November 13, 2015.  (ECF No. 18).  Plaintiff did not file his opposition, and Defendants did not file a reply.

## II. Motion to Dismiss

### A. Statement of Facts

According to the Complaint, Plaintiff submitted a CDCR-1362 Medical form complaining of "Bad Chest Pain, Cough and headaches to facility C yard medical staff" on September 27, 2013.  (ECF No. 1 at 4).  In response to the form, medical staff informed Correctional Officer O.

3

Martin to press her medical emergency alarm to request "an Institution Emergency Transport Vehicle" (IETV) for Plaintiff.

When the IETV arrived, Plaintiff informed Defendant Martin that he did not need to be transported "to CTC medical triage." Defendant Martin told Plaintiff she would issue him a written "RVR-115," or Rules Violation Report, for "Willfully delaying a Peace Officer in the performance of their duties." The RVR-115 was issued to Plaintiff on October 7, 2013. Plaintiff alleges Defendant issued the RVR-115 in retaliation for exercising his right to refuse medical treatment.

On October 19, 2013, Defendant Telles held the rules violation hearing. Plaintiff pled not guilty and requested that Defendant Telles "call his adverse and non-adverse witnesses." The Complaint alleges Defendant Telles denied the request. Plaintiff alleges this violated his due process rights and constitutes cruel and unusual punishment.

Plaintiff was found guilty of willfully delaying Defendant Martin in the performance of her duties. Plaintiff alleges this finding resulted in him being placed on "C-status," which meant the "loss of his T.V., C.D. player, [and] regular yard access." Plaintiff alleges these consequences are harsher and more severe than the restrictions placed on inmates housed in Security Housing Units (SHU) and Administrative Segregation Unites (ASU), because those inmates are allowed T.V.'s and radios. Plaintiff alleges this treatment constitutes cruel and unusual punishment.

Defendants acknowledge the facts are limited by the pleadings for purposes of their Motion to Dismiss, but argue that this Court may also

4

consider the actual contents of the Rules Violation Report as incorporated by reference into the Complaint. (ECF No. 14-1 at 13). Defendants attach a copy of the Rules Violation Report. (ECF No. 14-2 (Exh. A) at 12). The Rules Violation Report describes the events of September 27, 2013, as follows:

> On 09/27/13, at approximately 1038 hours, while performing my duties as Facility "C" Clinic Officer, L.V.N. Tomas asked me to let Inmate Sanchez, J07661, C5-124, in so Tomas could conduct a medical evaluation because Inmate Sanchez stated on a CDCR-1362 "Bad Chest Pain, Cough, and Headaches." R.M. Manaig instructed me to press the alarm for a medical emergency response, IETV requested. I pressed my alarm and announced a Code-1 Medical Emergency requesting IETV to C-Yard via radio. When the IETV responded to C-Clinic, Inmate Sanchez stated, "I'm fine, I only have a cough. I just wanted to be seen right away and not be charged the $5.00 dollars." The IETV was sent back to Central Health with no emergency. I informed Inmate Sanchez that he would be receiving a CDCR-115 for Willfully Delaying a Peace Officer in the Performance of Duties. The yard had to be put down for approximately 15 minutes while the IETV was on the yard.

(*Id.*).

## B. Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal

5

1  quotations omitted).  The pleader must provide the Court with "more

2  than an un-adorned, the-defendant-unlawfully-harmed-me accusation."

3  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4  555 (2007)).  "Threadbare recitals of the elements of a cause of action,

5  supported by mere conclusory statements will not suffice."  *Iqbal*, 556

6  U.S. at 678.  "Although for the purposes of a motion to dismiss [a court]

7  must take all of the factual allegations in the complaint as true, [a court

8  is] not bound to accept as true a legal conclusion couched as a factual

9  allegation." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

10     On a motion to dismiss for failure to state a claim, a pro se

11  pleading is construed liberally.  *Thompson v. Davis*, 295 F.3d 890, 895

12  (9th Cir. 2002) (citing *Ortez v. Washington Cty. Oregon*, 88 F.3d 804,

13  807 (9th Cir. 1996)).  The pro se pleader must still set out facts in his

14  complaint that bring his claims "across the line from conceivable to

15  plausible."  *Twombly*, 550 U.S. at 570.  A court may not "supply

16  essential elements of the claim that were not initially pled."  *Ivey v. Bd.*

17  *of Regents of the University of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

18  **C. Analysis**

19     **1. Fourteenth Amendment Due Process Claim**

20     The First Claim alleges Plaintiff's due process rights were violated

21  when Defendant Telles denied Plaintiff's request for witnesses at the

22  rules violation hearing.  (ECF No. 1 at 5-6).  Plaintiff alleges that, as a

23  result of the denial of due process, "he had to postpone his scheduled

24  appearance before the Board of Parole hearings for fear of being denied

25  up to 5 years…." (*Id.* at 3:24-25).  In addition, Plaintiff was placed "on

6

C-status program resulting in the loss of his T.V., C.D. player, [and] regular yard access." (*Id.* at 4:26-27; *see also id.* at 3:26-28 ("Also phone calls to family members…")).  Plaintiff further alleges that "[t]his punishment is harsher and [more] severe than inmates placed in SHU programs and Administrative Segregation Units, who are allowed their T.V.'s, radios etc." (*Id.* at 5:1-3).

Defendants assert that the Complaint does not allege facts implicating a liberty interest, as required to state a due process claim. (ECF No. 14-2 at 15-17).  Specifically, Defendants contend that Plaintiff's choice to postpone his Board of Parole hearing does not implicate a liberty interest because Supreme Court precedent forecloses prisoners with indeterminate life sentences, like Plaintiff, from proving that any particular rules violation will inevitably affect the duration of his term.  (*Id.* at 16 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Defendants further contend that prisoners do not have a liberty interest in avoiding placement on C-status because the limited loss of privileges does not impose an atypical and significant hardship. (ECF No. 14-2 at 15-17).  In addition, Defendants assert that the First Claim fails as to all Defendants besides Telles because Plaintiff did not include factual allegations showing direct personal involvement by Defendants Miller, Madden, Greenwood and Martin.  (*Id.* at 17).

### i. Liberty Interest

Under the Due Process Clause, a prisoner charged with a disciplinary violation is entitled to certain due process protections. *Wolff v. McDonnell,* 418 U.S. 539, 564–571 (1974).  Such protections

7

14cv2407-LAB-MDD

1  include the right to call witnesses. *Id.* "These healthy procedural

2  protections, however, adhere only when the disciplinary action

3  implicates a protected liberty interest." *Serrano v. Francis*, 345 F.3d

4  1071, 1077-78 (9th Cir. 2003).

5  Not every "state action taken for a punitive reason encroaches

6  upon a liberty interest under the Due Process Clause." *Sandin v.*

7  *Conner*, 515 U.S. 472, 482 (1995). "[The] range of interests protected by

8  procedural due process is not infinite. . . ." *Ingraham v. Wright*, 430

9  U.S. 651, 672 (1977) (citation omitted)). "[F]ederal courts ought to

10  afford appropriate deference and flexibility to state officials trying to

11  manage a volatile environment." *Sandin*, 515 U.S. at 482 (citations

12  omitted). "Discipline by prison officials in response to a wide range of

13  misconduct falls within the expected perimeters of the sentence

14  imposed by a court of law." *Id.* at 485.

15  The Complaint does not allege facts showing a liberty interest

16  with respect to the Board of Parole hearing or the C-status restrictions.

17  As for the Board of Parole hearing,

18  The decision to release a prisoner rests on a myriad of
   considerations. And, the prisoner is afforded procedural
19  protection at his parole hearing in order to explain the
   circumstances behind his misconduct record.
20  Haw.Admin.Rule §§ 23–700–31(a), 23–700–35(c), 23–
   700–36 (1983). The chance that a finding of misconduct
21  will alter the balance is simply too attenuated to invoke
22  the procedural guarantees of the Due Process Clause.

23

24  *Sandin*, 515 U.S. at 487. California affords prisoners procedural

25  protections at parole hearings similar to the Hawaiian regulations

8

discussed in *Sandin*. *See e.g.*, Cal. Code Regs. tit. 15, div. 2, ch. 2., art. 3 ("Prisoner's Rights" with respect to Parole Board Hearings). Here, as in *Sandin*, Plaintiff has not shown that this particular disciplinary finding will inevitably result in denial of parole. Plaintiff's alleged decision to delay his Board of Parole hearing because of this disciplinary violation does not establish the requisite liberty interest.

Plaintiff's C-status designation also does not implicate a liberty interest. Prison restrictions only create a liberty interest where they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (no liberty interest at stake in 30 day SHU placement).

The restrictions imposed on Plaintiff do not constitute an atypical and significant hardship when compared to the ordinary incidents of prison life. First, Plaintiff conclusorily alleges that these hardships are atypical and significant when compared to restrictions on SHU inmates. (ECF No. 1 at 5:1-3). The Court declines to accept this legal conclusion as true. *Iqbal*, 556 U.S. at 678 (courts are not bound to accept legal conclusions as true on motion to dismiss).

Second, Plaintiff alleges he was deprived of his T.V., C.D. player, some yard access, and some telephone calls with family. Defendants point to the Rules Violation Report,[2] which includes a description of the

---

[2] The Court treats the Rules Violation Report as part of the Complaint. Although the Report was not attached to the Complaint, the Complaint heavily references the Report and the Report forms the basis of the Complaint. (ECF No. 1 at ¶¶ 11, 12, 19, 25, 29, 30). Courts may treat documents that are referenced extensively or integral to the complaint

9

1 discipline imposed, to show that Plaintiff was only on C-status for 30

2 days, and was only denied some (not all) day room and yard activities in

3 that 30 day period.  (ECF No. 14-1 at 16:16-25).

4   Here, as in the cases Defendants rely on, the C-status

5 deprivations were limited in duration and type, and these limited

6 deprivations do not constitute a hardship that is atypical and

7 significant "in relation to the ordinary incidents of prison life." *Sandin*,

8 515 U.S. at 484; *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.

9 1987) ("a prisoner has no constitutional right to a particular

10 classification status"); *Wyatt v. Swearingen*, No. C 06-4228 RMW (PR)

11 2010 WL 135322, *8-*9 (N.D. Cal. Jan. 5, 2010) (no liberty interest in

12 prisoner's year-long C-status placement); *Washington v. Cal. Dep't of

13 Corrs. & Rehab.*, No. CIVS-09-0735 LKK DAD P, 2010 WL 729935, *1

14 (E.D. Cal. Mar. 1, 2010) (no liberty interest in delayed release from C-

15 status).  Plaintiff only alleges one difference that makes his restrictions

16 atypical when compared to prisoners in segregated confinement: that

17 those inmates are allowed T.V. and radio privileges.  Even accepting

18 this allegation as true, the T.V./C.D. player restriction does not impose

19 a significant hardship.

20

21 ————————————

22 as part of the complaint, "and thus may assume that its contents are
true for purposes of a motion to dismiss under Rule 12(b)(6)."  *U.S. v.*

23 *Ritchie*, 342 F.3d 903, 908 (2003).  Furthermore, Plaintiff has not
objected to Defendants' request that the Court consider the Report as

24 incorporated by reference into the Complaint, and the discipline

25 described in the report is consistent with the discipline Plaintiff alleges
in the body of the Complaint.

1  Plaintiff has not pled facts showing that he has a liberty interest

2  in not being placed on C-status.  In the absence of a liberty interest,

3  Plaintiff cannot state a due process claim.  As a result, this Court

4  **RECOMMENDS** dismissing Plaintiff's First Claim alleging violation of

5  his due process rights without leave to amend.  In the event the District

6  Court declines to adopt this recommendation, the Court now turns to

7  Defendants' alternative basis for dismissal.

8  ## ii.  Direct Involvement Not Alleged

9  The Court further agrees with Defendants that Plaintiff's due

10  process claim fails against Defendants Miller, Madden and Greenwood

11  because Plaintiff did not allege that any of these individuals were

12  personally involved in denying his request for witnesses at the hearing.

13  An official or staff member may be held liable for his or her own

14  conduct when sued in their individual capacity.  *Hafer v. Melo*, 502 U.S.

15  21, 30 (1991).  But there is no *respondeat superior* liability under §

16  1983.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Defendants

17  may be liable under § 1983 only if they were personally involved in the

18  constitutional deprivation.  *Dennis v. Thurman*, 959 F. Supp. 1253,

19  1261 (C.D. Cal. 1997) (citing *Redman v. Cnty. of San Diego*, 942 F.2d

20  1435, 1446 (9th Cir. 1991)).  A pleading must allege facts sufficient to

21  show the constitutional deprivation resulted from the failure of the

22  supervisor to train or supervise personnel, or from a policy or custom

23  that the supervisor knew or should have known would cause the

24  deprivation, or facts that show that the supervisor set in motion a series

25

14cv2407-LAB-MDD

of acts by others that the supervisor knew or should have known would cause the deprivation.  *Id*.

Plaintiff did not make any allegations suggesting personal responsibility by Defendants Miller, Madden or Greenwood.  The Complaint does not make even conclusory allegations that any of these Defendants knew about the underlying circumstances, that any of these Defendants participated in or directed the denial of witnesses at the hearing, or that these Defendants were responsible for a custom or policy resulting in the alleged deprivation.

Accordingly, this Court **RECOMMENDS** dismissal of the First Claim against Defendants Miller, Madden and Greenwood on this ground, even if the District Judge declines to adopt the recommendation to dismiss the claim due to the absence of a liberty interest.

## 2. **Retaliation Claim**

Defendants contend the Second Claim for retaliation for exercising a First Amendment right to refuse medical treatment fails for three reasons: (1) the Rules Violation Report incorporated by reference into the Complaint shows that Plaintiff was disciplined for lying—not for refusing medical treatment; (2) the First Amendment is not implicated even if Plaintiff was disciplined for refusing medical treatment because his refusal of medical treatment was not based on a religious belief nor does it constitute protected speech activity; and (3) the Complaint fails to allege facts showing personal involvement by any of the individuals, except Defendant Martin.  (*Id*. at 11-15).

14cv2407-LAB-MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### i.  Disciplined For Reasons Not Related to Protected Speech Activity

Defendants argue that the Court should rely on the contents of the Rules Violation Report, which contradicts Plaintiff's allegation that the Report was issued because he refused medical treatment.

Courts may treat documents that are referenced extensively or integral to the complaint as part of the complaint, "and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *U.S. v. Ritchie*, 342 F.3d 903, 908 (2003). "Specifically, courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (alteration in original) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  Courts may consider the contents of documents even when they directly contradict allegations in the complaint.  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Plaintiff's Complaint extensively references the Report, and the Report is central to his claims.  Plaintiff did not challenge the authenticity of the Report, either in this proceeding or in the administrative grievance proceeding.  Indeed, Plaintiff attached the Report in support of his grievance.  Accordingly, the Court will treat the contents of the Report as true without converting this motion to dismiss to a Rule 56 summary judgment motion.

13

14cv2407-LAB-MDD

1    The Report states that Plaintiff was disciplined because he stated

2    on a CDCR-1362 "Bad Chest Pain, Cough, and Headaches," even though

3    he later admitted, "I'm fine, I only have a cough.  I just wanted to be

4    seen right away and not be charged the $5.00 dollars," resulting in a 15

5    minute disruption of the yard and the prison staff's duties.  (ECF No.

6    14-2 at 12).  The contents of the Report show Plaintiff was not

7    disciplined for refusing medical treatment, but because he lied about

8    the severity of his medical complaint in order to be seen ahead of other

9    inmates and avoid a $5 fee.  There is nothing in the Report to suggest

10   Plaintiff was disciplined for refusing medical treatment or otherwise

11   exercising his First Amendment rights.  The First Amendment does not

12   protect a prisoner who makes false statements calculated to circumvent

13   reasonable prison policies for his own nominal personal benefit.

14       Even if Plaintiff's false statement were entitled to some degree of

15   First Amendment protection, his interests are outweighed by the

16   importance of the prison policies designed to ensure inmates with

17   health concerns are treated in an orderly manner, with serious

18   complaints receiving priority.  False medical alarms like Plaintiff's

19   could cause seriously ill inmates to suffer critical delays in treatment.

20   Prisons must be permitted to discipline prisoners who abuse policies

21   designed to prioritize inmates experiencing chest pain.

22       Consequently, this Court **RECOMMENDS** the Second Claim for

23   Retaliation be **DISMISSED** as to all Defendants.  Further, because the

24   Report incorporated into the Complaint establishes that Plaintiff cannot

25

14cv2407-LAB-MDD

cure the defect by amending the pleading, this Court **RECOMMENDS** that the claim be dismissed without leave to amend.

### ii.  Direct Involvement Not Alleged

Defendants also contend, and the Court agrees, that Plaintiff's retaliation claim fails against Defendants Miller, Madden, Greenwood and Telles because Plaintiff did not allege these Defendants were personally involved in Defendant Martin's issuance of the Rules Violation Report.  "A supervisory official may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Dennis*, 959 F. Supp. at 1261; *and see* discussion in Section II.C.1.ii, *supra*. There are no allegations in the Complaint to suggest that any of these Defendants were present when Defendant Martin issued the Rules Violation Report, that any of these Defendants instructed her to do so, nor that any of them were responsible for a policy or custom that they knew would result in Defendant Martin issuing an allegedly retaliatory Report.  Plaintiff fails to show how any of these four Defendants are responsible for Defendant Martin's decision to issue the Report.

Accordingly, this Court further **RECOMMENDS** that this claim be **DISMISSED** as to Defendants Miller, Madden, Greenwood and Telles for failure to allege direct involvement.

### 3.  Eighth Amendment Claim

Defendants contend the Third Claim for cruel and unusual punishment fails because the restrictions imposed by C-Status

15

placement did not deprive Plaintiff of any basic human need, as would be required to meet the objective element of the claim. (*Id.* at 18). Defendants further assert that this claim fails as to Defendants Miller, Madden, Martin and Greenwood because Plaintiff did not allege any of these Defendants were directly involved in the alleged misconduct. (*Id.* at 19). The Court agrees with both points.

"The Constitution 'does not mandate comfortable prisons,'" but prisons "must provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 42 U.S. 337, 349 (1981)). *Farmer* specifies that prisons "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (citations omitted) (also stating "[p]risons conditions may be restrictive and even harsh."). "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective." *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (citing *Farmer*, 511 U.S. at 834. Under the objective requirement, the alleged deprivation "must be, objectively, sufficiently serious, … ; a prison official's acts or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (citations omitted) (quoting *Rhodes*, 42 U.S. at 347).

The 30 day deprivation of a personal television, C.D. player, phone calls with family and some of his day room and yard privileges does not equate to a deprivation of "the minimal civilized measure of life's

14cv2407-LAB-MDD

necessities." *See Farmer*, 511 U.S. at 834; *Moore v. Lamarque*, 242 Fed. Appx. 458, 460 (9th Cir. 2007) (limitations on day room and yard privileges imposed on C-status inmate were not sufficient to state Eighth Amendment violation); *McLaughlin v. Diaz*, No. 1:14-CV-00784-AWI-JLT(PC), 2015 WL 1746556, at *3 (E.D. Cal. Apr. 16, 2015) (report and recommendation adopted, No. 1:14-CV-00784-AWI-JLT(PC), 2015 WL 3545674 (E.D. Cal. June 4, 2015)) (appeal pending) (Eighth Amendment claim based on C-status placement dismissed as insufficiently serious under the objective prong); *Washington v. Cal. Dep't of Corrs. & Rehab.*, No. CIV-09-0735 LKK DAD P, 2010 WL 729935, at *1 (E.D. Cal. Mar. 1, 2010) (same).  The Complaint does not allege an objectively, sufficiently serious deprivation of life's necessities.

Further, Plaintiff did not allege that any of the Defendants except Telles were directly involved in the alleged misconduct.  "A supervisory official may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Dennis*, 959 F. Supp. at 1261; *and see* discussion in Section II.C.1.ii, *supra*.  Plaintiff's failure to allege facts showing how Defendants Miller, Madden, Greenwood and Martin were each personally responsible for the C-status deprivations compels dismissal of this claim against those Defendants, even if Plaintiff had alleged an objectively serious deprivation.  Accordingly, this Court **RECOMMENDS** that the Third Claim be **DISMISSED** without leave to amend.

1   ### D. Conclusion

2   Because Plaintiff fails to state any cognizable claim, this Court

3   **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**

4   and Plaintiff's Complaint be **DISMISSED** without leave to amend.  In

5   the event the District Judge declines to adopt this recommendation, the

6   Court now turns to Defendants' motion for partial summary judgment.

7   ### III. Motion for Partial Summary Judgment

8   Defendants seek partial summary judgment on the ground that

9   Plaintiff failed to exhaust his administrative remedies as to all

10  Defendants and claims except the First Claim for due process violations

11  as to Defendant Telles.  Under the Prison Litigation Reform Act

12  (PLRA), "[n]o action shall be brought with respect to prison conditions

13  under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner

14  confined in any jail, prison, or other correctional facility until such

15  administrative remedies as are available are exhausted."  42 U.S.C. §

16  1997e(a) (West 2014); *see also Booth v. Churner*, 532 U.S. 731, 736

17  (2001) (requiring exhaustion even though the specific relief sought by

18  prisoner cannot be granted by administrative process); *Morton v. Hall*,

19  599 F.3d 942, 945 (9th Cir. 2010).  "[A] prisoner must complete the

20  administrative review process in accordance with the applicable

21  procedural rules . . . as a precondition to bringing suit in federal court."

22  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

23  ### A. Statement of Facts

24  Plaintiff alleges that he "has exhausted all available

25  administrative remedies," a statement verified by his signed statement

18

1  under penalty of perjury.  (ECF No. 1 at 5:22 (allegation), 8

2  (verification)).  But Plaintiff does not provide supporting factual

3  allegations in the Complaint, nor does he attach administrative

4  grievances to the pleading.  Plaintiff also did not provide a declaration

5  or other evidence as permitted by this Court's *Klingele* Notice and

6  Scheduling Order.

7      Defendants provide the Declaration of R. Gibson, Appeals

8  Coordinator.  (ECF No. 14-2).  The Gibson Declaration details the

9  administrative grievance process.  (*Id.* ¶¶ 2-3).  According to the Gibson

10  Declaration, Plaintiff only filed one grievance relevant to this case.  (*Id.*

11  ¶ 5).  The grievance, received by Centinela State Prison on November

12  25, 2013, is attached to and authenticated by the Gibson Declaration.

13  (*Id.* ¶ 5, Exh. A).

14      In that grievance, Plaintiff complained that Defendant Telles

15  should not have found Plaintiff guilty of willfully disobeying a peace

16  officer because Plaintiff has a Constitutional right, recognized by Cal.

17  Code Regs. tit. 15, § 3351(a), to refuse medical treatment.  (ECF No. 14-

18  2 at 8, 10).  The initial grievance does not name the other four

19  Defendants, does not complain the alleged denial of witnesses violated

20  his due process rights, and does not complain that the resulting

21  discipline violated Plaintiff's Eighth Amendment right to be free from

22  cruel and unusual punishment.  (*Id.*).

23      Plaintiff did not mention Defendant Martin in the initial appeal,

24  but he did mention her name on January 28, 2014, when appealing the

25  second level decision to the third level of review.  (*Id.* at 9, 11 ("The

19

14cv2407-LAB-MDD

SHO relied on statements made by c/o Martin (R.E.) and L.V.N.
Tomas…. [h]owever neither c/o Martin nor L.V.N. Tomas[3] are
authorized facility employed health care staff licensed to diagnose
illness or, prescribe medication and health care treatment for
inmates.").

Plaintiff exhausted his administrative remedies as to this
grievance, as noted in the April 17, 2014, Third Level Decision denying
Plaintiff's appeal.  (*Id.* at 21-22).

## **B.** **Legal Standard**

Federal Rule of Civil Procedure 56(c) authorizes the granting of
summary judgment "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of law."  The
standard for granting a motion for summary judgment is essentially the
same as for the granting of a directed verdict.  Judgment must be
entered, "if, under the governing law, there can be but one reasonable
conclusion as to the verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 250-251 (1986).

A defendant may move for summary judgment on the basis that
the plaintiff has failed to exhaust administrative remedies.  *Albino v.
Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc).  A defendant moving for
summary judgment on exhaustion grounds carries an initial burden of

---

[3] L.V.N. Tomas is not named as a Defendant in the Complaint.

14cv2407-LAB-MDD

showing that there is no genuine issue of material fact that an available administrative remedy existed and that the prisoner did not exhaust that remedy. *Albino*, 747 F.3d at 1172. "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Once the defendant has carried that burden, the plaintiff must come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172 (citation omitted). The nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED. R. CIV. P. 56; *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Liberty Lobby*, 477 U.S. at 249).

The Court must grant the motion for summary judgment if the evidence produced by the party opposing summary judgment is "merely colorable" or is "not significantly probative." *Liberty Lobby*, 477 U.S. at 249. The court need not accept legal conclusions "cast in the form of factual allegations." "No valid interest is served by withholding

14cv2407-LAB-MDD

summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989).

Moreover, "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).  However, "the district court may not disregard a piece of evidence at the summary stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 487 (9th Cir. 2015) (finding plaintiff's "uncorroborated and self-serving" declaration sufficient to establish a genuine dispute of material fact because the "testimony was based on personal knowledge, legally relevant, and internally consistent.").

## C. **Analysis**

Defendants have met their burden to show that a grievance procedure existed, and that Plaintiff was aware of and capable of using the procedure.  (ECF No. 14-2 ¶¶ 2-3 (Gibson Declaration describing administrative exhaustion process with reference to specific sections of the California Code of Regulations), ¶ 10, Exh. B (Record showing Plaintiff's grievance history from 2006 to the present)).

Defendants also have met their burden to show that Plaintiff did not exhaust the available administrative process as to any Defendant or claim, except for the Second Claim as to Defendant Telles for retaliating against Plaintiff for refusing medical treatment.  As explained further

below, the Court disagrees with Defendants' contention that Plaintiff's

grievance exhausted his First Claim for due process violation.

Defendants submitted unrebutted evidence that Plaintiff filed

only one pertinent grievance.  (ECF No. 14-2 ¶¶ 4-5 and Exh. A).  In

that grievance, Plaintiff complained that Defendant Telles should not

have found Plaintiff guilty of willfully disobeying a peace officer because

Plaintiff has a Constitutional right to refuse medical treatment.  (ECF

No. 14-2 at 8, 10).

Section 3084.2(a)(3) of Title 15 of the California Code of

Regulations requires an inmate filing a grievance to identify, by name

and title or position, any staff member alleged to be involved in the

action or decision being appealed, along with the dates each staff

member was involved in the issue being appealed.  If the inmate does

not have those details, he must provide any other available information

that would assist the appeals coordinator in identifying the staff

member or supervisor involved.  Cal. Code Regs. tit. 15, § 3084.2(a)(3).

In the initial grievance received by Centinela State Prison on

November 25, 2013, Plaintiff named Defendant Telles, but he did not

name Defendants Miller, Madden, Martin or Greenwood.  (ECF No. 14-

2 ¶¶ 5-7 and Exh. A).  Plaintiff also did not suggest that any other staff

members or supervisors were the focus of his complaint.  (*Id*.).

Plaintiff's passing reference to Defendant Martin after the second level

decision is not sufficient, because the regulations specify that

defendants must be named in the initial filing and that identifying a

defendant in a subsequent administrative appeal of the grievance does

23

14cv2407-LAB-MDD

not exhaust the claim as to that defendant.  Cal. Code Regs. tit. 15, § 3084.1(b).  Plaintiff only exhausted his claim of retaliation as to Defendant Telles, because Plaintiff only identifies Defendant Telles in the initial grievance.

Plaintiff's initial grievance also did not complain that he was denied the right to present witnesses or otherwise was denied due process, and did not complain about the conditions of his confinement or that his Eighth Amendment rights had been violated.  (ECF No. 14-2 at 8, 10).  To exhaust those claims, Plaintiff was required to raise those issues in his initial grievance.  Cal. Code Regs. tit. 15, § 3084.2(a)(1).  Plaintiff's failure to do so compels dismissal of the Fourteenth and Eighth Amendment claims as to all Defendants, including Telles.

### D. Conclusion

Plaintiff exhausted his Second Claim for retaliation against Defendant Telles only.  Plaintiff did not exhaust this claim as to Defendants Miller, Madden, Martin or Greenwood.  Plaintiff failed to exhaust his Fourteenth and Eighth Amendment claims against any Defendant.  Consequently, this Court **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment be **GRANTED**.  If this recommendation is adopted by the District Judge and the motion to dismiss is denied, the Second Claim against Defendant Telles would be the only remaining claim following summary judgment.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this

24

Report and Recommendation; (2) **GRANTING** Defendants' Motion to Dismiss without leave to amend; (3) **GRANTING** Defendants' Summary Judgment Motion; and (4) **DISMISSING** the case with prejudice.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **January 26, 2016**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **February 2, 2016**.  The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Date:   January 5, 2016

Hon. Mitchell D. Dembin
United States Magistrate Judge

25

14cv2407-LAB-MDD